IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Shelle M. Angelo | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| BELFOR USA Group, Inc. D/B/A | ) | |
| BELFOR PROPERTY RESTORATION | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BELFOR HOLDINGS INC. D/B/A | ) | |
| BELFOR PROPERTY RESTORATION | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BELFOR KANSAS CITY | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Shelle M. Angelo ("Shelle"), by and through counsel, and for her Complaint against Defendants BELFOR USA Group, Inc. d/b/a Belfor Property Restoration; BELFOR Holdings, Inc. d/b/a Belfor Property Restoration; and BELFOR Kansas City (collectively referred to herein as "BELFOR"), states and alleges as follows:

1.      The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs; arises under the constitution and laws of the United States; and is brought to recover damages and to secure equitable relief under said acts of Congress providing for the protection of civil rights.

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1332 and 1343; and 42 U.S.C. §2000e, *et seq.*

1

3.      A substantial part of the events or omissions giving rise to the claims complained of herein occurred in this judicial district.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391.

5.      Shelle is an adult female individual and a citizen of the United States who currently resides in Fairway, Johnson County, Kansas.

6.      Shelle was an "employee" of BELFOR as defined by 42 U.S.C. §2000e(f).

7.      Defendant BELFOR USA Group, Inc. d/b/a Belfor Property Restoration is, and at all times relevant hereto was, a corporation organized and existing under and by virtue of the laws of the State of Colorado, and registered to do business in the State of Kansas, with its principal place of business located at 185 OAKLAND AVE., STE. 150, BIRMINGHAM, MI 48009. Defendant BELFOR USA Group, Inc. is engaged in interstate commerce and transacts business in the State of Kansas. Defendant BELFOR USA Group, Inc.'s Registered Agent in the State of Kansas is The Corporation Company, Inc., located at 12 SW 7TH STREET SUITE 3C, TOPEKA, KS 66603.

8.      Defendant BELFOR Holdings, Inc. d/b/a Belfor Property Restoration is, and at all times relevant hereto was, a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 185 OAKLAND AVE., STE. 150, BIRMINGHAM, MI 48009.  Defendant  BELFOR Holdings, Inc. d/b/a Belfor Property Restoration is engaged in interstate commerce and transacts business in the State of Kansas.

9.      Defendant BELFOR Kansas City is engaged in interstate commerce and transacts business in the State of Kansas, with its principal place of business located at 112 GREYSTONE

2

AVE., KANSAS CITY, KS 66103.

10.    BELFOR, at all times relevant hereto, was Shelle's employer as defined by 42 U.S.C. §2000e(b) and continuously employed and now employs more than fifteen (15) persons engaged in industry affecting commerce for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year, within the meaning of 42 U.S.C. §2000e(b).

11.    On or about December 18, 2020, Shelle timely filed Charge No. 563-2021-00685 against BELFOR with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC").

12.    Shelle is a member of the category of persons protected from discrimination and retaliation pursuant to 42 U.S.C. 2000e, *et seq*.

13.    Shelle began working for BELFOR on December 1, 2016.

14.    At all times during her employment with BELFOR, Shelle performed the duties of her employment in a satisfactory manner.

15.    On October 1, 2020, Shelle was constructively discharged from her employment at BELFOR because of her sex and in retaliation for her reporting sexual harassment in the workplace.

16.    On or about May 26, 2021, the EEOC issued a Notice of Right to Sue for Shelle's Charge of Discrimination.

17.    Shelle has filed this action within 90 days of the date of her Notice of Right to Sue, and within two (2) years of the last act of discrimination alleged herein.  (A true and accurate copy of the Charge of Discrimination and Notice of Right to Sue are attached hereto as Exhibit A and are incorporated herein by reference).

18.   The Charge of Discrimination included within the attached Exhibit A provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the investigation which could reasonably be expected to have grown out of the charge.

19.   Shelle has met all deadlines and has satisfied all procedural, administrative, and judicial prerequisites to filing suit.

20.   As a result of BELFOR's conduct, Shelle has lost wages and benefits of employment, suffered emotional distress and mental anguish, and incurred attorneys' fees and costs of litigation, and will continue to incur such fees and costs.

21.   The sexual harassment, hostile work environment and retaliation endured by Shelle and BELFOR's constructive discharge of Shelle's employment, as described herein, were the direct proximate cause of Shelle's damages.

22.   BELFOR's conduct was outrageous because of the BELFOR's evil motive or reckless indifference to Shelle's right not to be discriminated against, and is conduct for which punitive damages are warranted.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23.   On or about December 1, 2016, Shelle was hired by BELFOR Kansas City, a subsidiary of BELFOR USA Group, Inc. and/or BELFOR Holdings, Inc., to perform duties in business development.

24.   Shelle was constructively discharged on October 1, 2020.

25.   Almost immediately after Shelle began her employment with BELFOR she began to experience sexual harassment from BELFOR management employees and co-workers.

26.     The sexual harassment continued until Shelle was constructively discharged on October 1, 2020.

27.     The sexual harassment consisted of sexually explicit language, physical touching, being called offensive names, and unwanted sexual propositions.

28.     Shelle objected to the sexual harassment numerous times, but it continued throughout her employment.

29.     Shelle reported the sexual harassment on numerous occasions to BELFOR management and BELFOR Human Relations, but nothing was ever done and no corrective action was ever taken by BELFOR to stop the sexual harassment.

30.     Although she was subjected to sexual harassment on a daily basis, Shelle continued to work at BELFOR because she was a single mother and needed to work.

31.     After Shelle reported the sexual harassment to BELFOR, the sexual harassment continued and actually became worse in retaliation to her complaints.

32.     Shelle's employment performance was always outstanding throughout her employment with BELFOR.

33.     On October 1, 2020, Shelle was forced to resign her employment with BELFOR because of the constant sexual harassment and retaliation for lodging complaints about the sexual harassment.

34.     Shelle was discriminated against because of her sex (female), she endured a hostile work environment based upon sexual harassment, she was sexually harassed in retaliation for complaining about the sexual harassment she endured on a daily basis, and she was constructively discharged in violation of Title VII of the Civil Rights Act of 1964, as

amended.  The following factual descriptions demonstrate some, but not all, of the more severe incidents of sexual harassment Shelle endured.

35.     As a part of her employment duties, Shelle was asked to travel outside of her primary region of Kansas City to assist facilities in Minneapolis, Minnesota; Wichita, Kansas; and Omaha, Nebraska.

36.     In addition to her primary employment responsibilities, Shelle was also asked to represent BELFOR at regional and national events, such as PLRB, NAA (National Apartment Association), and BOMA (Building Owners Managers Association), among others.

37.     Prior to a visit Shelle made to the BELFOR Wichita office, her general manager, Rodney Todd ("Todd"), informed local personnel in Wichita that they could "use and abuse" Shelle.

38.     One of the Wichita employees, Ross Peck ("Peck"), then requested that Shelle Facetime with him because "he liked to see what the women he worked with looked like".  Peck later referred to Shelle as a "cunt".

39.     Shelle informed Todd of the interaction with Peck and her description of what took place was confirmed by another employee that witnessed the interaction.

40.     Todd's response to Shelle's reported sexual harassment was that the employee who corroborated her description of what took place in Wichita "would 'do' [Shelle] too if he had a chance".  Nothing further was done by BELFOR regarding this incident.

41.     A few months later, Peck allegedly harassed a second female and, instead of reprimanding the employee, Todd requested the employee be transferred to BELFOR's Kansas City location to work with Shelle.

42.     Shelle was also required to work closely with estimators as a part of her employment with

BELFOR.

43.   One particular estimator that Shelle worked with on a regular basis, Scott Lockard ("Lockard") repeatedly commented on her appearance, suggested that he and Shelle "get together", and told Shelle that he loved her.

44.   Shelle consistently told Lockard "no", to "stop", and that they would "never be together".

45.   In June of 2017, after a company function, Lockard asked Shelle if she wanted to go to his hotel room and snuggle, to which she quickly declined.

46.   In September 2017, while Shelle was home in bed ill, Lockard asked Shelle if he could come by her residence, to which she again quickly declined.

47.   In June 2018, Lockard sent a text message to Shelle and asked "can I bring you coffee in bed so I don't waste a good morning."

48.   In response to Lockard's text message, Shelle confronted Lockard in his office and told him to stop sexually harassing her.

49.   After Shelle confronted Lockard in his office, Shelle had to repeatedly tell Lockard to stop sexually harassing her, she was forced to take actions to avoid Lockard, she would leave the office when Lockard was the only other person present, she refused to ride alone with Lockard, even to meetings they were to attend together, she was forced to avoid company events where Lockard was present, and she would not invite Lockard to company functions, even when his presence would have been beneficial to Shelle's employment performance.

50.   Shelle also had numerous discussions with Todd regarding Lockard's behavior, but Todd refused to take any action and he actually participated with Lockard in staring at Shelle. This conduct went so far as Todd and Lockard exchanging comments about what they hoped

Shelle would wear on a particular day and they named articles of her clothing, such as "the tight black pants".

51.   Lockard constantly made sexually explicit comments about Shelle and often asked her to sit on his lap while he talked to her, which she always readily declined.

52.   In May of 2020, while Shelle was taking inventory with Lockard and Todd, Lockard stated that Shelle "could be at risk of being finger banged" by both he and Todd.

53.   This incident was reported to Mike Yellen ("Yellen"), a co-owner of BELFOR, but nothing was done.

54.   Shelle expressed concerns to Yellen about how nothing was done by BELFOR when she reported these incidents and how reporting the incidents of sexual harassment might negatively impact her employment.

55.   In May of 2020, Shelle received notification that there was a loss at one of the BELFOR properties in the western region.  Shelle called her contact at that location to ensure that the matter was being taken care of, and then emailed the estimator at that BELFOR location (Sven Bradley who was also the general manager) to see if she could help in any way.

56.   Sven Bradley ("Bradley") responded with a comment regarding Shelle's "million dollar smile" and told Shelle that he would be happy to have Shelle come and help with that account. He then told Shelle that he had a funny story to tell her and asked Shelle to call him.

57.   When Shelle called Bradley, thinking the conversation would be about the loss to the property, the conversation quickly became about Shelle personally.

58.   Bradley told Shelle that he had looked her up on Facebook, saw her profile picture, and wondered how a "young 20 year old cutie with an amazing body" could have acquired this

account.

59.    Bradley then stated that he had gone through all of Shelle's photographs and posts and realized that the girl in Shelle's profile picture was "not her little sister", but her daughter. Bradley also stated that who he thought was Shelle's father was actually a boyfriend.

60.    Bradley then stated that he was impressed with the fact that Shelle had "an amazing body for someone [Shelle's] age."

61.    Bradley then inquired as to Shelle's heritage and stated that in being a Filipino American Shelle would be a nice addition to his "Russian and Mexican" women already working for him.

62.    Bradley then asked Shelle if she wanted to go with him to Cabo, Mexico.

63.    In response, Shelle redirected the conversation to the property loss and then ended the call.

64.    This incident was reported to Yellen and his only response was that he could see how Shelle received this kind of interaction given her attractiveness and how "engaging" she was.

65.    Shelle also reported these incidents to Teresa Franze ("Franze") in BELFOR's Human Resources department.

66.    Instead of ensuring Shelle that these matters would be dealt with properly, Franze threatened Shelle with the consequences of pursing the allegations any further.

67.    Franze also told Shelle she would reach out to Todd and instruct him to review appropriate office behavior with the staff in the Kansas City office. The result was that Todd instructed Shelle to get up in front of the entire Kansas City office and explain the expectations for office interaction.

68.    On June 10, 2020, approximately three weeks later, Lockard grabbed Shelle's buttocks as

they were walking into a client luncheon.

69. On August 17, 2020, while at golf event with the clients, Lockard used his golf club to lift up Shelle's skirt in front of clients.

70. Shelle reported these incidents involving Lockard to both Todd and Franze, but nothing was done in response.

71. After Shelle spoke with Franze about Lockard's conduct, Shelle refused to attend any further marketing events where Lockard would be present, which was materially adverse to Shelle being able to perform her employment duties at BELFOR.

72. Todd set a tone in the office that it was alright to ogle over Shelle, talk sexually about her in her presence, and sexually harass her, without any consequences.

73. Todd consistently made aggressive comments to Shelle, typically when they were alone driving to meetings, etc., that were inappropriate and sexual in nature, such as "I'm married, not dead".

74. Todd also told a co-worker that "sometimes I just ask [Shelle] to come into my office to look at her".

## COUNT I
## GENERAL DISCRIMINATION BASED UPON SEX

75. To the extent they are not inconsistent, Shelle hereby restates, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 74 of this Complaint as if fully stated in this Count I.

76. Shelle belongs to a protected class, she is a female.

77. Shelle was subjected to improper sexual harassment, as described herein.

78. The aforementioned improper sexual harassment was based upon Shelle's  gender.

10

79.     Shelle suffered an adverse employment action as a result of the improper sexual harassment, in that the unbearable employment conditions and hostile work environment Shelle endured resulted in a constructive discharge.

80.     The improper sexual harassment described herein took place under circumstances giving rise to an inference of discrimination.

81.     The improper sexual harassment described herein materially affected the compensation, terms, conditions and privileges of Shelle's employment with BELFOR, in that it the sexual harassment altered the terms, conditions and/or privilege of Shelle's employment and created an abusive working environment.

82.     Based on the foregoing, Shelle is entitled to compensatory and punitive damages.

83.     Based on the foregoing, Shelle is entitled to her attorneys' fees.

WHEREFORE, Plaintiff Shelle M. Angelo prays for judgment against Defendants BELFOR USA Group, Inc. d/b/a Belfor Property Restoration; BELFOR Holdings, Inc. d/b/a Belfor Property Restoration; and BELFOR Kansas City Defendant BELFOR U.S.A., Inc., jointly and severally, upon Count I of her Complaint for actual damages in excess of $75,000.00; punitive damages against said Defendants for the intentional violation of rights guaranteed to Plaintiff Shelle M. Angelo as set forth herein; for her costs herein expended, including reasonable attorneys' fees; and for such further relief as the Court may deem appropriate.

## COUNT II
### HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

84.     To the extent they are not inconsistent, Shelle hereby restates, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 83 of this Complaint as if fully stated in this Count II.

85. Shelle is, and at all times relevant was, employed by BELFOR in business development.

86. BELFOR, by and through its management employees and Shelle's co-workers, subjected Shelle to improper sexual harassment, as described herein.

87. Shelle was discriminated against because of her sex, as described herein.

88. The improper sexual harassment described herein was sufficiently severe and/or pervasive so as to alter the terms and/or conditions of Shelle's employment, to unreasonably interfere with Shelle's work performance, and to create an intimidating, abusive, hostile and/or offensive working environment.

89. The hostile work environment was composed of a series of separate acts that collectively constitute one unlawful employment practice.

90. The acts of harassment described herein are facially sex based.

91. BELFOR's conduct was materially adverse to Shelle's employment status.

92. The improper sexual harassment by BELFOR's management and co-workers, as described herein, altered a term, condition and/or privilege of Shelle's employment and created an abusive work environment.

93. A rational jury could easily find that Shelle's workplace was permeated with discriminatory intimidation, ridicule and/or insult.

94. BELFOR knew or should have known about the hostile work environment, but failed to stop it.

95. BELFOR had actual and constructive knowledge of the hostile work environment, but failed to adequately respond to notice of the harassment.

96. BELFOR's response to the claims of sexual harassment reported by Shelle was unreasonable.

97.     Based on the foregoing, Shelle is entitled to compensatory and punitive damages.

98.     Based on the foregoing, Shelle is entitled to her attorneys' fees.

WHEREFORE, Plaintiff Shelle M. Angelo prays for judgment against Defendants BELFOR USA Group, Inc. d/b/a Belfor Property Restoration; BELFOR Holdings, Inc. d/b/a Belfor Property Restoration; and BELFOR Kansas City Defendant BELFOR U.S.A., Inc., jointly and severally, upon Count I of her Complaint for actual damages in excess of $75,000.00; punitive damages against said Defendants for the intentional violation of rights guaranteed to Plaintiff Shelle M. Angelo as set forth herein; for her costs herein expended, including reasonable attorneys' fees; and for such further relief as the Court may deem appropriate.

## COUNT III
## RETALIATION

99.     To the extent they are not inconsistent, Shelle hereby restates, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 98 of this Complaint as if fully stated in this Count III.

100.    The improper sexual harassment by BELFOR's management and co-workers altered a term, condition and/or privilege of Shelle's employment and created an abusive work environment.

101.    Shelle engaged in protected opposition to the discrimination and improper sexual harassment described herein by reporting the improper sexual harassment to BELFOR's management and its Human Resources department.

102.    BELFOR's management and Human Resources knew about, orchestrated, participated in, and/or acquiesced in the improper sexual harassment described herein, as to condone and encourage it.

103.    BELFOR illegally retaliated against Shelle by orchestrating, participating in, acquiescing in,

13

condoning and encouraging the improper sexual harassment described herein, and by subjecting Shelle to unjust discipline, suspending, demoting and/or constructive discharge of Shelle, solely because she had reported the sexual harassment described herein.

104.    BELFOR had no legitimate business reasons for any of such acts.

105.    BELFOR's conduct was materially adverse to Shelle's employment status.

106.    BELFOR's retaliatory harassment was sufficiently severe as to constitute an adverse employment action.

107.    A reasonable employee would have found the challenged action by BELFOR materially adverse.

108.    BELFOR's actions in response to Shelle's reports of improper sexual harassment well might have dissuaded a reasonable worker from complaining, making or supporting a charge of discrimination.

109.    BELFOR's acts of retaliation are in violation of Title VII.

110.    A causal connection existed between the protected activity, Shelle's reports of improper sexual harassment, and the materially adverse actions described herein.

111.    As a direct and proximate result of BELFOR's willful, knowing and intentional discrimination and retaliation against her, Shelle has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

112.    As a direct and proximate result of BELFOR's willful, knowing and intentional discrimination and retaliation against her, Shelle has suffered and will continue to suffer a loss of earnings and other employment benefits and employment opportunities.

113.    Based on the foregoing, Shelle is entitled to compensatory and punitive damages.

14

114.	Based on the foregoing, Shelle is entitled to her attorneys' fees.

WHEREFORE, Plaintiff Shelle M. Angelo prays for judgment against Defendants BELFOR USA Group, Inc. d/b/a Belfor Property Restoration; BELFOR Holdings, Inc. d/b/a Belfor Property Restoration; and BELFOR Kansas City Defendant BELFOR U.S.A., Inc., jointly and severally, upon Count I of her Complaint for actual damages in excess of $75,000.00; punitive damages against said Defendants for the intentional violation of rights guaranteed to Plaintiff Shelle M. Angelo as set forth herein; for her costs herein expended, including reasonable attorneys' fees; and for such further relief as the Court may deem appropriate.

## COUNT IV
## CONSTRUCTIVE DISCHARGE

115.	To the extent they are not inconsistent, Shelle hereby restates, realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 114 of this Complaint as if fully stated in this Count IV.

116.	Shelle was discriminated against by BELFOR, as described herein, to the point where a reasonable person in her position would have felt compelled to resign her employment.

117.	BELFOR deliberately rendered Shelle's working conditions so intolerable that a reasonable person would find such working conditions intolerable, thus forcing her to resign her employment with BELFOR.

118.	Shelle had no other choice but to resign her employment with BELFOR.

119.	Shelle's actions in leaving her employment with BELFOR were the reasonably foreseeable consequence of BELFOR's discriminatory actions and the hostile work environment Shelle endured on a daily basis.

120.	A reasonable person would find Shelle's working conditions intolerable and so objectionable

15

that a reasonable person would have deemed resignation the only plausible alternative.

121.    As a direct and proximate result of BELFOR's willful, knowing and intentional discrimination and retaliation against her, Shelle has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

122.    As a direct and proximate result of BELFOR's willful, knowing and intentional discrimination and retaliation against her, Shelle has suffered and will continue to suffer a loss of earnings and other employment benefits and employment opportunities.

123.    Based on the foregoing, Shelle is entitled to compensatory and punitive damages.

124.    Based on the foregoing, Shelle is entitled to her attorneys' fees.

WHEREFORE, Plaintiff Shelle M. Angelo prays for judgment against Defendants BELFOR USA Group, Inc. d/b/a Belfor Property Restoration; BELFOR Holdings, Inc. d/b/a Belfor Property Restoration; and BELFOR Kansas City Defendant BELFOR U.S.A., Inc., jointly and severally, upon Count I of her Complaint for actual damages in excess of $75,000.00; punitive damages against said Defendants for the intentional violation of rights guaranteed to Plaintiff Shelle M. Angelo as set forth herein; for her costs herein expended, including reasonable attorneys' fees; and for such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Shelle respectfully demands trial by a jury on all issues so triable.

16

Respectfully submitted,

BECKETT & HENSLEY, L.C.

*/s/ Jeffrey M. Hensley*
Jeffrey M. Hensley            #15417
jeff@beckettandhensley.com
Theodore C. Beckett, III
tcb@beckettandhensley.com
2345 Grand Boulevard, Suite 1600
Kansas City, MO 64108
Tele:   (816) 471-7500
Fax:    (816) 222-0708

Attorneys for Plaintiff Shelle M. Angelo