## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Shelle M. Angelo,**

**Plaintiff,**

v.                                                          **Case No. 21-2366-JWL**

**BELFOR USA Group, Inc. d/b/a**
**Belfor Property Restoration;**
**BELFOR Holdings, Inc. d/b/a**
**Belfor Property Restoration; and**
**BELFOR Kansas City,**

**Defendants.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff filed suit against defendants alleging sex discrimination, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq. This matter is presently before the court on defendant BELFOR Kansas City's motion to dismiss for failure to state a claim upon which relief can be granted (doc. 29) and BELFOR Holdings, Inc.'s motion to dismiss for lack of jurisdiction (doc. 31). As will be explained, plaintiff's complaint against defendant BELFOR Kansas City is dismissed with prejudice and plaintiff's complaint against defendant BELFOR Holdings, Inc. is dismissed with prejudice.

BELFOR Kansas City moves to dismiss the claims against it on the grounds that it is not a separate entity with the capacity to be sued but simply an informal name utilized by BELFOR USA Group, Inc. to refer to its Kansas business. In response, plaintiff states that she does not object to the dismissal without prejudice of her complaint as to this defendant. Although defendant BELFOR Kansas City moved to dismiss the complaint with prejudice, it has not filed

a reply brief addressing plaintiff's position.  Nonetheless, as plaintiff does not challenge the substance of defendant's motion in any way, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").  The court, then, grants the motion to dismiss and plaintiff's complaint against this defendant is dismissed with prejudice.

Defendant BELFOR Holdings, Inc. moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Plaintiff bears the burden of establishing personal jurisdiction over BELFOR Holdings. *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1227 (D. Kan. 2020).  In the absence of an evidentiary hearing, a plaintiff must make only a prima facie showing of jurisdiction to defeat a motion to dismiss. *Id*. "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id*. (citing *AST Sports Sci., Inc. v. CLF Distrib. Ltd*., 514 F.3d 1054, 1056–57 (10th Cir. 2008) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). Allegations in a complaint are accepted as true if they are plausible, non-conclusory, and non-speculative, to the extent that they are not controverted by submitted affidavits. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008).[1]  When a defendant has produced evidence to support a

---

[1] Plaintiff does not rely on the allegations in her complaint to support personal jurisdiction over BELFOR Holdings, Inc. nor could she properly so do.  Aside from a vague and conclusory allegation that BELFOR Holdings, Inc. "transacts business in the State of Kansas" without any indication about the nature of the business in which BELFOR Holdings, Inc. is purportedly engaged in the state, no other allegations in the complaint are directed toward this defendant specifically.  Plaintiff simply refers to all defendants collectively in her complaint as "BELFOR."

challenge to personal jurisdiction, the plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint. *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).   The court resolves all factual disputes in favor of the plaintiff. *Dudnikov*, 514 F.3d at 1070 (citation omitted).

In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules.  *Creech v. P.J. Wichita, LLC*, 2017 WL 914810, at *2 (D. Kan. Mar. 8, 2017) (citations omitted).   To establish personal jurisdiction over a defendant, plaintiff must show that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process.  *Id*. (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000)). The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the court proceeds directly to the constitutional analysis.  *Id*. (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).  The due process analysis is comprised of two steps. First, the court must consider whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *Id*. (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1159–60 (10th Cir. 2010) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can*., 149 F.3d 1086, 1091 (10th Cir. 1998))). If the requisite minimum contacts are found, the court will proceed to the second step in the due process analysis—ensuring that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

"Minimum contacts" can be established in one of two ways, either generally or specifically for lawsuits based on the forum-related activities:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Id*. at \*3 (citing *Dudnikov*, 514 F.3d at 1078). Specific jurisdiction exists over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id*. (citing *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985))). For jurisdictional purposes, the court must evaluate "[e]ach defendant's contacts with the forum State . . . individually." *Id*. (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

In support of its motion to dismiss, defendant BELFOR Holdings, Inc. has submitted the affidavit of Paul Suchowski, BELFOR USA Group's Controller in Birmingham, Michigan. Mr. Suchowski avers that he has personal knowledge of the corporate structure and operations of BELFOR USA Group in light of his position as Controller. He avers that BELFOR USA Group maintains an office in Kansas City, Kansas and that plaintiff was hired by BELFOR USA Group, Inc. to work at that location. He avers that BELFOR Holdings, Inc. does not directly transact business in Kansas and does not have any meaningful contacts whatsoever with Kansas. BELFOR Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Michigan. According to Mr. Suchowski, BELFOR Holdings is a true holding company with no operations in or connection to Kansas; it is a parent business entity that does not

4

manufacture anything, sell any products or services, or conduct any other business operations. He avers that BELFOR Holdings' purpose is to hold the controlling stock or membership interests in other companies; that it exercises no financial control over BELFOR USA Group, Inc. and no control over BELFOR USA Group, Inc.'s hiring or appointment of its management personnel; and that BELFOR Holdings does not receive any revenue as a result of the BELFOR USA Group's work in Kansas.  Mr. Suchowski avers that BELFOR USA Group, Inc. is a wholly owned subsidiary of BELFOR USA Ltd. which, in turn, is a wholly owned subsidiary of BELFOR Holdings, Inc.

Plaintiff acknowledges that BELFOR Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Michigan and that BELFOR USA Group, Inc. is an indirect subsidiary of BELFOR Holdings, Inc.  Nonetheless, plaintiff maintains that the court may exercise personal jurisdiction over BELFOR Holdings, Inc. by virtue of the parent-subsidiary relationship between BELFOR Holdings, Inc. and BELFOR USA Group, Inc. and because those entities shared some officers and the same business address; because of plaintiff's beliefs about the relationship between BELFOR Holdings, Inc. and BELFOR USA Group, Inc. and broad statements on www.belfor.com about the nature and scope of BELFOR Holdings, Inc.'s operations; and because Mike Yellen, the Secretary of both BELFOR Holdings, Inc. and BELFOR USA Group, Inc., emailed plaintiff about her employment purportedly in his capacity as Secretary of BELFOR Holdings, Inc.[2]

---

[2] To the extent plaintiff implicitly suggests that BELFOR USA Group, Inc.'s forum contacts may be imputed to BELFOR Holdings, Inc. through the alter ego doctrine (a phrase plaintiff does not utilize in its submissions), plaintiff has come forward with no evidence that separation of these entities has not been maintained or that BELFOR Holdings, Inc. has exercised pervasive or

*General Jurisdiction*

Plaintiff summarily asserts that BELFOR Holdings, Inc. is subject to the court's general personal jurisdiction.  General jurisdiction in a forum other than the defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where the defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  It is undisputed that BELFOR Holdings, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Michigan.  Given that background, this is not an "exceptional case" where defendant's operations in Kansas are so substantial as to render it "at home" in Kansas.   Plaintiff suggests in her submissions and the exhibits attached thereto that BELFOR Holdings, Inc. maintains continuous and systematic contacts with Kansas by virtue of the fact that BELFOR USA Group, Inc., its indirect subsidiary, does business in Kansas.  In a related vein, plaintiff highlights that BELFOR Holdings, Inc. and BELFOR USA Group, Inc. share a handful of officers and the same business address in Birmingham, Michigan.

The court rejects the argument that a defendant may be subject to the general personal jurisdiction of the court solely because one of its indirect subsidiaries conducts business in Kansas.

---

substantial control over BELFOR USA Group, Inc.'s finances, policy, and practices such that BELFOR USA Group, Inc. "has no separate mind, will, or existence of its own and is but a business conduit for its principal."  *See AKH Company, Inc. v. Universal Underwriters Ins. Co*., 2018 WL 4111717, at *5-6 (D. Kan. 2018); *Butler v. Daimler Trucks N.A., LLC*, 2020 WL 4785190, at*4-5 (D. Kan. 2020).  In addition, plaintiff has not referenced any of the factors considered by courts in evaluating whether the corporate veil should be pierced under an alter ego theory of liability.

*See Butler v. Daimler Trucks N.A., LLC*, 2020 WL 4785190, at *8 (D. Kan. Aug. 18, 2020) (rejecting argument that the defendant was subject to the general personal jurisdiction of the court because one of its indirect subsidiaries sold products through a network of authorized dealers including dealers in Kansas); *Noland v. Enterprise Holdings, Inc.*, 2010 WL 11627581, at *3 (D. Kan. Aug. 16, 2010) (fact that parent and subsidiary shared same headquarters was not sufficient to establish personal jurisdiction over parent).  Plaintiff has no evidence refuting defendant's evidence that BELFOR Holdings, Inc. maintains a separate corporate existence from its indirect subsidiary and does not exert substantial control or direction over its indirect subsidiary.  *See Sprint Communications, L.P. v. Cox Communications, Inc.*, 896 F. Supp. 2d 1049, 1062-63 (D. Kan. 2012) (no general jurisdiction over parent of indirect subsidiary even where parent company provided administrative, technical and legal support to indirect subsidiary).

Plaintiff relies in large part on unsworn, unverified excerpts from the "About Us" tab on the www.belfor.com website that contain broad statements that BELFOR Holdings, Inc. "operates a number of companies including BELFOR Property Restoration."  But other excerpts state more specifically that "BELFOR USA Group is a privately-owned subsidiary of BELFOR Holdings Inc. and operates under the brand name of BELFOR Property Restoration."  See https://www.belfor.com/en/us/about-us/our-company.   In any event, the isolated excerpts highlighted by plaintiff are not sufficient to demonstrate that BELFOR Holdings, Inc. had actual control over BELFOR USA Group.  The exercise of personal jurisdiction on such a basis would necessitate disregarding the well-established rule that a nonresident parent corporation may not be subjected to personal jurisdiction merely because of the parent-subsidiary relationship.  *See Noland*, 2010 WL 11627581, at *5 (sweeping statements on website concerning scope of

7

operations were not sufficient to establish personal jurisdiction in the absence of evidence that parent exercised actual control over subsidiary); *Briseno v. Mktg. & Mgmt. Sols*., LLC, 2020 WL 5203454, at *3 (D. Kan. Sept. 1, 2020) (the fact that parent company held itself out as "operating" to some undefined degree the activities of the subsidiary did not, without more, demonstrate that parent controlled and dominated subsidiary for purposes of personal jurisdiction analysis); *Ma v. CVS Pharmacy, Inc.*, 2020 WL 533702, at *3 (N.D. Ill. Feb. 3, 2020) (unsworn statements in unverified printouts from various websites that attributed employment to parent company rather than subsidiary did not persuade court that the companies' corporate or employment relationships were different from that described in sworn affidavit); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 986-88 (C.D. Cal. 2013) (excerpts from holding company's website did not establish control over subsidiary's operations for purposes of agency or alter ego). Similarly, plaintiff's general averments that she "understood" that BELFOR Holdings, Inc. operated Belfor Property Restoration and that she believed BELFOR Holdings, Inc and BELFOR USA Group "to be the same company" because those companies shared officers is simply not sufficient to rebut the sworn testimony of Mr. Suchowski, who has personal knowledge of the relationship between these entities. *See Seo v. H Mart Inc*., 2020 WL 5547913, at *5 (N.D. Ill. Sept. 16, 2020) (plaintiff's general allegations "on information and belief" about nature of relationship between parent and subsidiary did not establish joint employer relationship).

In sum, plaintiff has not made a prima facie showing that BELFOR Holdings, Inc. is subject to the court's general personal jurisdiction.

*Specific Jurisdiction*

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984)).  Plaintiff contends that this relationship is established by Mike Yellen's communications with plaintiff during the course of her employment. Mr. Yellen is a corporate officer of both BELFOR Holdings, Inc. and BELFOR USA Group, Inc. Plaintiff asserts that Mr. Yellen communicated with plaintiff in his capacity as a corporate officer of BELFOR Holdings, Inc. and that such communication is sufficient to establish purposeful direction at plaintiff in the forum state.  To highlight her argument, plaintiff directs the court to *Wingerd v. KAABOOWorks Services*, LLC, 2018 WL 4185133 (D. Kan. Aug. 31, 2018).  But that case is distinguishable from the case here.  In *Wingerd*, the plaintiff asserted employment claims against two affiliated entities, alleging that both were his employers.  *Id*. at *1.  Madison Companies, LLC was headquartered in Colorado and was a Delaware limited liability company. *Id*. at *2.  Madison, for a time, was the sole member of the defendant KAABOO, also a limited liability company.  *Id*.  The entities shared the same administrative office, the same CEO, Bryan Gordon, and the same Senior Vice President of Human Resources, Shawna Earnest.  *Id*.  After the plaintiff filed his lawsuit, the defendant Madison moved to dismiss for lack of personal jurisdiction.  *Id*. at *1.  The court denied the motion, finding sufficient contacts with both the plaintiff and Kansas to support personal jurisdiction.  *Id*. at *6.

In so holding, the court focused on several pieces of evidence establishing the requisite contacts, including the fact that both Gordon and Earnest had communicated with plaintiff in their capacities as Madison officers.  *Id*. at *5.  To establish this fact, the plaintiff submitted evidence that he received email communications from those officers from the "@madisoncos.com" domain

9

and that Earnest identified herself in those emails in her dual capacity for both companies. *Id.* at *2. In fact, the email that plaintiff received in which his employment was terminated came from Gordon and Earnest at their "madisoncos.com" email accounts and contained both Madison and KAABOO logos and markings and they regularly communicated with him about his employment utilizing the "madisoncos.com" domain. *Id.* at *3, *6. Other evidence relevant to the court's minimum contacts analysis included evidence that the Madison corporate logo appeared on disability time-off forms distributed to the plaintiff when he applied for disability leave; evidence that Madison extended an invitation to the plaintiff for its annual holiday party; and Gordon's statement to the plaintiff that he would always have a place at KAABOO and "at Madison." *Id.* Moreover, plaintiff's separation agreement, which was mailed and emailed to him in Kansas, included a release of claims against Madison. *Id.*

Unlike the situation in *Wingerd*, plaintiff here has no evidence that any emails or other communications or documents contained BELFOR Holdings, Inc. markings or logos. While emails she received from Mr. Yellen came from the "@us.belfor.com" domain (the same domain as plaintiff's email), she has no evidence that this domain is the one used by BELFOR Holdings, Inc. as opposed to BELFOR USA Group, Inc. The BELFOR Holdings, Inc. name does not appear in any of the email exchanges submitted by plaintiff and there is nothing in those emails reflecting that Mr. Yellen was acting in his capacity as an officer of BELFOR Holdings, Inc. when he was communicating with plaintiff. Similarly, although plaintiff avers that Mr. Yellen told her to contact Human Resources in connection with her complaint of sexual harassment in the workplace and that BELFOR Holdings, Inc. and BELFOR USA Group share the same human resources department, she does not offer any evidence about her dealings with human resources or any other

evidence suggesting that these two entities failed to observe corporate formalities in connection with her complaint.  In essence, plaintiff's evidence is that the two entities share common officers and the same business address—evidence that the court in *Wingerd* indicated would be insufficient to establish minimum contacts.  *See id*. at *5 ("Plaintiff here has shown more than Gordon and Earnest worked for both KAABOO and Madison.").[3] Because plaintiff has failed to make a prima facie showing that BELFOR Holdings, Inc. purposefully directed any activities at Kansas or its residents, the court cannot exercise specific personal jurisdiction over this defendant.  The motion to dismiss is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant BELFOR Kansas City's motion to dismiss (doc. 29) is **granted**.  Plaintiff's complaint against defendant BELFOR Kansas City is **dismissed with prejudice**.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant BELFOR Holdings, Inc.'s motion to dismiss (doc. 31) is **granted** and plaintiff's complaint against this defendant is **dismissed with prejudice.**

**IT IS SO ORDERED.**

---

[3] In her response to the motion to dismiss, plaintiff asserts that "While Shelle's Employment Agreement was technically with BELFOR Holdings USA, that does not dictate the personal jurisdiction inquiry."  The employment agreement is not in the record and, of course, "BELFOR Holdings USA" is not an entity in this lawsuit.  The court presumes that plaintiff intended to state that her employment agreement was executed with BELFOR USA Group.

Dated this __6th__ day of May, 2022, at Kansas City, Kansas.


s/ John W. Lungstrum
_____
John W. Lungstrum
United States District Judge